```
                    United States District Court
                     District of Massachusetts
 _____
                               )
BARBATINE NORCEIDE, NARCES     )
NORCEIDE, JACK WALSH, COLES    )
VOYARD and BARBARA BURNS, on   )
behalf of themselves and all   )
others similarly situated,     )
                               )
          Plaintiffs,          )   Civil Action No.
                               )   10-11729-NMG
     v.                        )
                               )
CAMBRIDGE HEALTH ALLIANCE,     )
                               )
          Defendant.           )
 _____)
```

## MEMORANDUM AND ORDER

**GORTON, J.**

This is a wage-and-hour action in which current and former employees of defendant Cambridge Health Alliance ("CHA") allege that they were not compensated for time worked during their meal breaks and before and after their shifts. Plaintiffs claim that these practices violate the Fair Labor Standards Act ("FLSA"), the Massachusetts Wage Act and their employment contracts with CHA. Trial is now scheduled to begin on March 24, 2014.

In an Order entered on February 12, 2014, "with memorandum and order to follow," this Court allowed defendant's motion to decertify the conditionally certified class but denied defendant's motion for partial summary judgment, plaintiffs' cross motion for summary judgment and defendant's motion to

-1-

strike plaintiffs' cross motion. It also denied as moot plaintiffs' motion for clarification of an Order with respect to filing deadlines. The Court now publishes the subject memorandum and order and denies a joint motion to schedule a status conference regarding case deadlines in light of the pending mediation and brief postponement of trial.

I.  **Background**

The named plaintiffs in this case are all current or former non-exempt, hourly employees of Cambridge Hospital, Somerville Hospital or Whidden Memorial Hospital. Barbatine Norceide worked as a unit secretary at Cambridge Hospital between March and September, 2010 and claims that she frequently missed lunch breaks or had her lunches interrupted and worked before and after her scheduled shifts. Narces Norceide has worked as a registered nurse at Cambridge Hospital and Whidden Memorial Hospital since 2009 and claims that his meal breaks were interrupted more than half of the time and he worked, on average, 5-10 minutes before and 15 minutes after his scheduled shift. Jack Walsh, who worked in the pharmacy department at Cambridge Hospital, claims that he seldom received a meal break and worked one to three hours outside of his scheduled shifts each week. Coles Voyard was an admission nurse from 2005 to 2010 at Whidden Memorial Hospital and alleges that he worked through his lunches two to three times per week and frequently

had his lunches interrupted on work-related matters.  Barbara Burns asserts that she worked at Somerville Hospital and Cambridge Hospital during the period addressed in the Third Amended Complaint and that, between missed lunch breaks and working past her scheduled shift, she worked three to six extra hours per week.  All five named plaintiffs allege that they were compensated only for scheduled time and therefore were not compensated for missed or interrupted lunch breaks or for work performed before and after their scheduled shifts.

This Court previously conditionally certified an opt-in class of 205 individuals who claim to have been uncompensated for missed or interrupted lunch breaks or for work performed outside of scheduled shifts.  The class consisted of a wide range of CHA employees including nurses, cooks, intake specialists, housekeepers and medical interpreters, among others.  Class members worked at three different CHA hospitals (Somerville Hospital, Cambridge Hospital and Whidden Memorial Hospital) for many different supervisors.  They were subject to different collective bargaining agreements negotiated by their respective unions.

Defendant received 34 responses from 85 opt-in class members who received a Court-approved questionnaire and deposed four of those members who responded.  Of the 33 questionnaires sampled by plaintiffs, 32 indicated that the employee had

performed some work for which he or she had not been paid and 19 reported that they complained about not getting paid for time worked.

Defendant made several of its employees available for depositions under Fed. R. Civ. P. 30(b)(6) including its former Senior Vice President of Human Resources, Joan Bennett.  Ms. Bennett explained that CHA's policy is to pay for time worked and suggested that two documented instances in which supervisors declined to pay overtime when the extra work was not pre-approved were anomalies involving overzealous supervisors rather than a reflection of the actual policies of CHA.  There is also evidence in the record that plaintiffs and class members who sought payment for uncompensated time were ultimately compensated.

## II. **Procedural history**

Plaintiffs filed their initial Complaint in October, 2010, and the case was assigned to United States District Judge Nancy Gertner.  In August, 2011, Judge Gertner allowed plaintiffs' motion to amend their Complaint and to conditionally certify a collective action class under the FLSA but also allowed, in part, and denied, in part, defendant's motion to dismiss.  The case was reassigned to this Session in September, 2011.  In July, 2013, the Court adopted a Report and Recommendation of Magistrate Judge Robert Collings to allow, in part, and deny, in

part, defendant's motion to dismiss. As a result, two named plaintiffs, John Bryant and Noelle Akin, were dismissed from the action.

Defendant moved for partial summary judgment and to decertify the conditionally-certified collective action in August, 2013. Plaintiffs filed a cross-motion for partial summary judgment in September, 2013 which defendant moved to strike as untimely. The Court postponed the trial, originally scheduled for October, 2013, in light of the pending motions and its own docket congestion. Trial was rescheduled for early March, 2014, but has since been postponed until March 24, 2014, because mediation is scheduled in the interim.

### III. Defendant's motion to decertify the conditionally-certified collective action class

#### A. Legal standard

The FLSA authorizes an employee to bring suit against an employer on his or her own behalf and on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Such actions are permitted "to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

This Court, like others in the First Circuit, follows a two-tiered approach in deciding whether putative class members are "similarly situated". See Kane v. Gage Merch. Servs., Inc.,

138 F. Supp. 2d 212, 214 (D. Mass. 2001). At the initial "notice" stage, the Court relies upon the pleadings and affidavits to determine whether plaintiffs have made a "modest factual showing" that the putative class members were together subject to "a single decision, policy or plan that violated the law." Trezvant v. Fidelity Emp'r Servs. Corp., 434 F. Supp. 2d 40, 42-45 (D. Mass. 2006).

If the Court conditionally certifies a collective action at the "notice" stage, defendants may move to decertify the class following discovery and the Court will make a "factual determination" as to whether similarly situated employees have opted in. Reeves v. Alliant Techsystems, Inc., 77 F. Supp. 2d 242, 247 (D.R.I. 1999). Most courts focus on the following three factors:

> (1) the disparate factual and employment settings--e.g., whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural concerns.

Id. (citations omitted).

**B.  Application**

In August, 2011, the Court conditionally certified a class comprised of non-exempt employees who were 1) subject to an automatic meal break deduction and yet were not paid for time worked during a meal break or for a missed meal break or 2) paid

only for scheduled time even when they began work before the start of the scheduled shift or worked past the end of their scheduled shift. Pursuant to the opt-in protocol of the Court, plaintiffs' counsel mailed class notices to 2,872 current and former non-exempt CHA employees, of whom 205 remain in the opt-in class after defendant's motion to dismiss. That class includes a wide range of CHA employees, including nurses, cooks, intake specialists, housekeepers and medical interpreters, among others. Furthermore, class members work at three different CHA hospitals (Somerville Hospital, Cambridge Hospital and Whitten Hospital) for many different supervisors and are subject to different collective bargaining agreements negotiated by their respective unions. The record suggests that the reasons for missed meal breaks and working before and after scheduled shifts varied widely as did the propensity of opt-in members to request overtime pay for extra work. Many responses to the questionnaire indicated that employees neither sought compensation nor complained about uncompensated work.

   Plaintiffs assert that those differences are irrelevant to the question of whether the conditionally-certified class should be decertified. They maintain that the question of whether CHA's corporate policy is to ignore deliberately and thus fail to compensate any unreported time worked during meal periods or before or after shifts is amenable to common, class-wide proof.

Specifically, plaintiffs suggest that the issue of whether CHA had constructive knowledge that plaintiffs and opt-in class members were working off the clock can be proven on a class-wide basis. They contend that the differences discussed above are relevant only to the question of damages which are frequently determined on an individual basis in class actions.

The Court disagrees. While plaintiffs are correct that CHA generally required overtime work to be approved by the employer's manager before being submitted to payroll, it was lawful for CHA to do so. See Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 461-62 (S.D.N.Y. 2011). It was also lawful for CHA automatically to deduct time for meal breaks and to shift the burden to employees to report when their meal breaks were missed or interrupted. Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 673 (6th Cir. 2012) (explaining that an automatic deduction policy, by itself, comports with the FLSA). Moreover, the record indicates that CHA's official policy was to pay employees for the time they worked. To that end, there were processes through which employees could be compensated absent manager approval such as contacting payroll directly or working through their unions and that employees who followed those procedures were compensated. Frye, 495 F. App'x at 670. The record indicates that plaintiffs who followed such procedures were paid. Moreover, the fact that some employees chose not to

follow those procedures is not sufficient to establish that CHA had constructive knowledge of uncompensated work or a general, common policy of failing to compensate for all work performed. White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012).

In essence, plaintiffs have not presented sufficient evidence of a corporate policy to require work without pay that would render class-wide resolution appropriate.  Instead, given their disparate work settings, reasons for missing lunch breaks and working early or late and the diverse reasons for their not seeking compensation or being rebuffed when they did, liability cannot be determined on a class-wide basis.  It would necessarily require individualized inquiries into the actions of different supervisors. See MacGregor v. Farmers Ins. Exch., No. 10-03088, 2011 WL 2981466, at *3 (D.S.C. 2011) (collecting cases in which courts found that individualized decisions by supervisors did not indicate a common policy or practice sufficient to satisfy the "similarly situated" requirement). Such inquiries would undermine the purpose of a collective action to streamline adjudication of the claims of class members.  Consequently, the Court will allow defendant's motion to decertify the conditionally-certified class.

## IV. Defendant's motion for partial summary judgment

Defendant moved for summary judgment on Count I of the Third Amended Complaint with respect to plaintiffs' allegations that defendant failed to pay a minimum wage in violation of the FLSA.  While styled as a motion for summary judgment, the motion in essence urges the Court to reconsider its previous ruling that plaintiffs' minimum wage claims will be assessed by the "hour-by-hour" method rather than the weekly average method employed by the Second Circuit in United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960).

Defendant's motion will be denied under the law of the case doctrine, which holds that

> when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

Arizona v. California, 460 U.S. 605, 618 (1983).  The First Circuit recognizes narrow exceptions to that doctrine, including

> if the initial ruling was made on an inadequate record or was designed to be preliminary; if there has been a material change in controlling law; if there is newly discovered evidence bearing on the question; and if it is appropriate to avoid manifest injustice.

Naser Jewelers, Inc. v. City of Concord, 538 F.3d 17, 20 (1st Cir. 2008) (citing Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002)).  None of those exceptions applies here.  There has been no change in the prevailing law as far as this Court is concerned because the First Circuit has not weighed in on the

proper rule. There is nothing in the previous ruling that suggests that it was intended to be preliminary. Nor does the fact that the Court followed the minority approach to the defendant's dissatisfaction render it manifestly unjust. To hold otherwise would eviscerate the law of the case doctrine whenever the previous ruling adopts a minority rule.

### V. Plaintiff's cross motion for partial summary judgment and defendant's motion to strike

In their memorandum opposing defendant's motion for partial summary judgment, plaintiffs cross-moved, in an untimely fashion, for summary judgment with respect to defendant's alleged violation of the FLSA. Defendant moved to strike that cross motion on the ground that it was filed without leave of Court or notice more than one month after the deadline for the filing of dispositive motions.

In any event, allowance of plaintiffs' motion is unwarranted at this time. None of their affirmative arguments is relevant to their opposition to defendant's motion because no evidence of defendant's liability under the hour-by-hour method was necessary to rebut defendant's arguments. It would therefore be improper to enter summary judgment in plaintiffs' favor before defendant has an opportunity to present evidence to rebut particular contentions. See Sec'y of Labor v. DeSisto, 929 F.2d 789, 792 (1st Cir. 1991) (citing Anderson v. Mt. Clemens

Pottery Co., 328 U.S. 680, 687-88 (1946), superseded by statute on other grounds as recognized in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972)) (explaining that burden shifts to employer once plaintiff carries her burden of proving that she performed work for which she was improperly compensated).  While the Court declines to strike plaintiffs' motion as untimely filed, it will not penalize defendant for failing to proffer its own evidence in rebuttal of plaintiffs' untimely cross-motion.

**VI.  Plaintiffs' motion for clarification**

After this Court allowed defendant's motion to extend the deadline for defendant to move to decertify the conditionally certified FLSA collective action class until August, 2013, plaintiffs moved the Court to clarify that its order applied to all unfiled motions including a possible motion to certify a class action under Fed. R. Civ. P. 23.  That motion is moot because the August, 2013 deadline has passed and, in any event, the subject Order applied only to defendant's motion to decertify and to no other motions.  Moreover, the Court had previously extended the deadline for the filing of such a motion which deadline plaintiffs failed to meet or move to extend. See Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 570 (1st Cir. 2012).

**VII. <u>Joint motion for a status conference</u>**

The Court did not address the pending motion for a status conference in its previous Order. That motion is denied because the subject trial deadlines have been extended in light of the pending mediation.

<u>**ORDER**</u>

Accordingly,

1)  Plaintiffs' motion for clarification (Docket No. 94) is **DENIED as moot;**

2)  Defendant's motion for partial summary judgment (Docket No. 101) is **DENIED;**

3)  Defendant's motion to strike plaintiffs' cross-motion for summary judgment (Docket No. 122) is **DENIED;**

4)  Plaintiffs' cross-motion for partial summary judgment (Docket No. 117) is **DENIED;**

5)  Defendant's motion to decertify the conditionally-certified collective action class (Docket No. 104) is **ALLOWED;** and

6)  The joint emergency motion to schedule a status conference (Docket No. 131) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton<br>Nathaniel M. Gorton<br>United States District Judge

Dated February 24, 2014